UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER CHANCY, JOSHUA HYUN, and TYLER CURINGTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FOSSIL GROUP, INC.,<br><br>Defendant. | Case No.: 25-cv-1566-AJB-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART FOSSIL GROUP, INC.'S MOTION TO DISMISS**<br><br>**(Doc. No. 7)** |

Before the Court is Defendant Fossil Group, Inc.'s ("Fossil") Motion to Dismiss Plaintiffs' Class Action Complaint. (Doc. No. 7.) Plaintiffs opposed the motion (Doc. No. 12) and Fossil replied. (Doc. No. 13). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Fossil's Motion to Dismiss. (Doc. No. 7.)

**I.    BACKGROUND**

   **A.    Procedural History**

Plaintiffs Alexander Chancy, Joshua Hyun, and Tyler Curington ("Plaintiffs") bring this class action lawsuit against Fossil for alleged violations of California's Unfair Competition Law ("UCL") and California's False Advertising Law ("FAL"). (Doc. No. 1-2 ¶¶ 54–90.) Plaintiffs seek restitution, injunctive relief, and attorneys' fees. (*Id.* ¶ 91.)

1

On May 14, 2025, Plaintiffs filed this class action complaint in San Diego Superior Court. (Doc. No. 1-2.) On June 18, 2025, Fossil removed the case to federal court. (Doc. No. 1.) On July 25, 2025, Fossil filed the instant motion moving to dismiss Plaintiff's Complaint in its entirety. (Doc. No. 7.)

### B. Factual History

Fossil is an American design and manufacture company that sells fashion accessories online, in store, and to third-party retailers. (Doc. No. 1-2 ¶ 16.) On Fossil's website, product prices are compared to a "Like Style" price. (*Id.* ¶ 18.) Fossil's merchandise catalog page lists each product with bold, red, current product prices, next to the struck-through Like Style price and apparent discount. (*Id.* ¶¶ 25–27.) On each product's details page, next to the Like Style pricing is a light grey "i." (*Id.* ¶ 27.) When hovered over, the following message appears: "Our 'like style' pricing reflects what similar items have originally sold for at department stores or boutiques. The percentage off is a comparison between our price and the original price of similar items. Like style prices may vary, but we know you'll love ours." (*Id.*) This disclosure is not displayed on the merchandise catalog webpage. (*Id.*) Rather, consumers may only see the disclosure when hovering over the "i" symbol on a particular product's webpage. (*Id.*)

In Fossil's outlet stores, Plaintiffs allege that the product price tags also list the true product price, Like Style price, and supposed discount. (*Id.* ¶ 18.) Plaintiffs maintain that Fossil stores completely omit any disclosure of Like Style's definition. (*Id.* ¶ 27.) Although in-store sales receipts reflect the alleged discounts, the receipts do not define Like Style. (*Id.* ¶ 29.)

On or around May 23, 2023, Plaintiff Chancy purchased a watch on the Fossil website for approximately $52.08. (*Id.* ¶ 11.) The watch Like Style price was $180.00. (*Id.*) Plaintiff Chancy asserts he made this purchase because Fossil's website advertised the watch as 60% off. (*Id.*) However, Plaintiff Chancy contends that the watch was never listed at $180.00 on Fossil's website. (*Id.*)

Likewise, on or around April 3, 2024, Plaintiff Curington purchased a watch from Fossil's website. (*Id.* ¶ 12.) Plaintiff Curington bought the watch for $88.00, approximately 67% off the estimated $270.00 Like Style price. (*Id.*) Plaintiff Curington asserts that the watch was never offered for sale at $270.00. (*Id.*)

On December 11, 2024, Plaintiff Hyun purchased a watch for $79.00 at a Fossil Outlet Store in Commerce, California. (*Id.* ¶ 13.) According to the watch's price tag, related signage, and receipt, Plaintiff Hyun perceived the original price to be $180.00, creating a $101.00 discount. (*Id.*) However, Plaintiff Hyun contends that the watch was never offered for sale at $180.00. (*Id.*)

Plaintiffs allege that the Like Style pricing model creates the impression of substantial savings, prompting consumer purchases. (*Id.* ¶¶ 33–37.) But Plaintiffs contend that the Like Style pricing is not indicative of the price of the advertised item, which presents an artificial discount. (*Id.* ¶ 24.) As such, Plaintiffs claim that Fossil inflated the Like Style price to reflect a higher discount. (*Id.* ¶¶ 41–42.) Plaintiffs maintain that Fossil does not, nor does it intend to, sell the items for the Like Style price. (*Id.* ¶¶ 38–39.)

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the

court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### B. Federal Rule of Civil Procedure 9(b)

A party alleging fraud must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to make more specific allegations so a defendant "can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation omitted)); *see also Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993).

### C. Leave to Amend

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Thus, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Along with Fossil's motion to dismiss (Doc. No. 7-1), Fossil submitted requests for judicial notice and incorporation by reference. (Doc. Nos. 7-2, 7-3, 7-4, 7-5). The Court will assess each of Fossil's requests in turn.

### A. Judicial Notice

Fossil requests that the Court take judicial notice of Fossil's Like Style disclosure, in-store signage, and images of the disputed labels from other cases that Fossil cites in its

motion to dismiss. (Doc. No. 7-2 at 2.) Plaintiffs did not oppose Fossil's requests. (*See* Doc. No. 12.)

According to Federal Rule of Evidence 201(b), "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice at any stage of a proceeding. Fed. R. Evid. 201(d). Judicial notice is uncommon during the pleading phase, as "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint" under Federal Rule of Civil Procedure 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 288 (9th Cir. 2001)). Considering information outside the pleading typically converts the Rule 12(b)(6) motion to dismiss for failure to state a claim into a Rule 56 motion for summary judgment, but judicial notice can serve as an exception. *Id.* at 998; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### 1. Exhibit A: Like Style Disclosure

Fossil seeks judicial notice of "[t]he fact that, when present on a Fossil website product, the tooltip icon adjacent to a Like Style label reveals a pop-up that states: 'Our "like style" pricing reflects what similar items have originally sold for at department stores or boutiques. The percentage off is a comparison between our price and the original price of the similar items. Like style prices may vary, but we know you'll love ours." (Doc. No. 7-2 at 2.) Exhibit A is a screenshot of this pop-up. (Doc. No. 7-3.) The exact language is included in Plaintiff's Complaint. (Doc. No. 1-2 ¶ 27.)

Relying on the court's reasoning in *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021), Fossil argues that the Court may take judicial notice of a webpage and its associated privacy policy. (Doc. No. 7-2 at 3.) In *Brown*, Google requested that the court take judicial notice of their terms of service, privacy policy, privacy notice, and several of its webpages. *Brown*, 525 F. Supp. 3d at 1061. Brown responded and requested

judicial notice of the dates that the webpages were last accessed, rather than the actual webpages. *Id.* The court granted both requests reasoning that the webpages and documents were on publicly available websites. *Id.*

Generally, "websites and their contents may be judicially noticed." *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (citations omitted); *see also EVO Brands, LLC v. Al Khalifa Grp., LLC*, 657 F. Supp. 3d 1312, 1323 (C.D. Cal. 2023); *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, No. 16-cv-1304-JVS-DFM, 2016 WL 4487895, at *1 n.1 (C.D. Cal. Aug. 23, 2016). However, courts in this circuit frequently find it improper to judicially notice websites. In *Genasys Inc. v. Vector Acoustics, LLC*, the defendant brought a Rule 12(b)(6) motion to dismiss all claims. 638 F. Supp. 3d 1135, 1144 (S.D. Cal. 2022). Defendant sought judicial notice for the information contained in webpage screenshots as true. *Id.* at 1146. The court denied all requests regarding the website screenshots reasoning that the court may judicially notice the existence of a website but cannot accept the website's contents as true. *Id.* at 1146–47. Likewise, in *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1006–08 (N.D. Cal. 2024) the court declined to take judicial notice of webpages reasoning that a public webpage does not automatically favor judicial notice, especially when it is the seeking party's website.

Fossil is seeking judicial notice of the text on its webpage. (Doc. 7-2 at 2.) Fossil does not provide the Court authentication of the screenshot or a timestamp. Further, Fossil did not verify whether this language was on the website when the Plaintiffs viewed it during their respective purchases. While this language is relevant to the case, that does not outweigh the accuracy concerns. Moreover, it would be improper to judicially notice the contents of the webpages as true. *See Genasys*, 638 F. Supp. 3d at 1146–47. Accordingly, the Court **DENIES** Fossil's judicial notice for Exhibit A.

### 2. Exhibit B: In-Store Return Policy

Exhibit B is an image of Fossil's return policy. (Doc. No. 7-4 at 2.) Fossil seeks judicial notice of "the fact that Fossil stores contain signage that state: "This store carries Fossil's favorite styles – specially made just for our outlets." (Doc. No. 7-2 at 2.) Fossil

alleges that a copy of this "signage [is] posted at all Fossil outlet stores." (*Id.* at 3.) Fossil contends that the Court can grant this request for judicial notice request because the Complaint refers to in-store signage. (Doc. No. 7-2 at 3.) However, Plaintiffs' position is that there is no in-store signage defining the Like Style pricing model. (Doc. No. 1-2 ¶ 27.) Although Plaintiffs acknowledged that there was some sort of signage at the 100 Citadel Drive outlet store, they do not elaborate on what the signage was. (*Id.* ¶ 13.)

At the motion to dismiss stage, a court may take into account documents not included in the complaint when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document[.]" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But here, Plaintiffs do dispute what signage was posted at Fossil's outlet store and what information was displayed on any such signage. (Doc. No. 1-2 ¶ 27.) Accordingly, the Court **DENIES** Fossil's request to judicially notice the fact that Fossil stores contain signage and any related verbiage. (Doc. Nos. 7-2 at 2; 7-3, Ex. B.)

### 3. Exhibit C: Labels At Issue in Similar Cases

Lastly, Fossil seeks judicial notice of Exhibit C which contains images of product labels at issue in cases which Fossil cites to in its motion to dismiss. (Doc. Nos. 7-2 at 2; 7-5 at 2–29; *see* Doc. No. 7-1 at 24–26.) Fossil asserts the Court may take judicial notice of case documents from other courts. (Doc. No. 7-2 at 3 (citing *Allen v. City of Los Angeles*, 92 F.3d 842, 850 (9th Cir. 1992) (overruled on other grounds); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)). That is correct "if those proceedings have a direct relation to matters at issue." *Allen*, 92 F.3d at 850; *see, e.g.*, *Holder*, 305 F.3d at 866 (taking judicial notice of related trial court and Court of Appeal opinions and briefs to assess issue preclusion).

Fossil also contends that judicial notice can extend to court opinions. (Doc. No. 7-2 at 3–4.) While court filings are public records, they must be relied upon by the court or relevant to the claim. *See Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-01344-LHK, 2014 WL 789083, at *2 n.2 (N.D. Cal. Feb. 26, 2014); *Flower Sisters LLC v. Great Am.*

*Ins. Co.*, No. EDCV201294DMGSPX, 2021 WL 4472904, at *1 (C.D. Cal. May 20, 2021) (hearing transcripts were denied as moot; "The Court need not take judicial notice of court orders or opinions in order to consider them to the extent they are authoritative or persuasive[]"); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 498 F. Supp. 3d 1233, 1237–38 (C.D. Cal. 2020) (documents not relied upon were denied judicial notice).

Here, the labels which Fossil seeks to judicially notice do not have a direct relation to the matters at issue. The images are public record but fail to be persuasive and directly relate to the present claims. The Court **DENIES** Fossil's request for judicial notice of Exhibit C.

### B. Incorporation by Reference

As an alternative to judicial notice, Fossil argues that the Court can incorporate Exhibits A and B by reference. (Doc. No. 7-2 at 2.) Plaintiffs do not acknowledge Fossil's request in their response. (*See* Doc. No. 12.)

Incorporation by reference is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. This doctrine allows the court to incorporate documents and other instruments into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. Merely mentioning a document does not constitute extensive reference. *Id.* at 908–09. Incorporation by reference does not convert a Rule 12(b)(6) motion into a motion for summary judgment. *Id.*

#### 1. Exhibit A: Like Style Disclosure

As an alternative to its request for judicial notice, Fossil requests that the Court consider Like Style disclosure language via the incorporation by reference doctrine. (Doc. No. 7-2 at 2.)

Fossil relies on *Knievel v. ESPN*. (Doc. No. 7-2 at 2.) In *Knievel*, motorcycle stuntman Evel Knievel and Krystal Knievel brought a defamation suit against ESPN. *Knievel*, 393 F.3d at 1070. The Knievels attended an award show, where a photographer

captured a photo of Mr. Knievel in between his wife and a younger, unidentified woman. *Id.* at 1071. ESPN published the photo to its website, captioned, "Evel Knievel proves that you're never too old to be a pimp." *Id.* ESPN filed a motion to dismiss for failure to state a claim and requested incorporation by reference. *Id.* at 1071, 1076. The Knievels attached the image and caption to their complaint. *Id.* at 1076. ESPN requested the court review the home page and the nine photographs preceding the Knievels' photo. *Id.* at 1076–77. The Knievels did not dispute the content or authenticity of these pages. *Id.* at 1076. The court thereby considered the webpages under the incorporation by reference doctrine. *Id.* at 1077.

Additionally, Fossil relies on *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1158 (9th Cir. 2012). (Doc. No 7-2 at 2–3.) In *Davis*, the plaintiff submitted a credit card application with the expectation that there was no annual fee. *Davis*, 691 F.3d at 1158. The plaintiff filed a class action complaint, alleging the defendants failed to adequately disclose the annual fee. *Id.* at 1158–59. The defendants sought to incorporate documentation reflecting the fee. *Id.* at 1160. The trial court incorporated three disclosure documents: the Important Terms & Disclosures Statement, Privacy Statement, and Cardmember Agreement and Disclosure Statement. *Id.* Davis made references to these documents in detail, explaining what contents were visible to him and describing how the statements provided conflicting information about the annual fee. *Id.* The Ninth Circuit held that the trial court properly applied the incorporation by reference doctrine. *Id.* at 1161.

Here, similar to *Knievel* and *Davis*, Plaintiffs' Complaint includes the language at issue. (Doc. No. 1-2 ¶ 27.) Fossil is seeking incorporation by reference of the "Like Style" disclosure. (Doc. Nos. 7-2 at 2; 7-3 at 2.) The full disclosure is in the Complaint (*id.*), providing the definition of "Like Style pricing," which is the basis of Plaintiffs' claims and referenced throughout. (*See* Doc. No 1-2). And the crux of Plaintiffs' allegations is that Fossil had false and misleading advertising with inadequate disclosures. (*See* Doc. No 1-2.) Plaintiffs include the disclosure in the Complaint and base their claim on what "Like Style" means to the reasonable consumer. (Doc. No. 1-2 ¶¶ 18–28.) Plaintiffs' Complaint includes the exact language that Fossil seeks to incorporate by reference. (Doc. No. 1-2 ¶ 27.)

Plaintiffs' case depends on the interpretation of this language. (*See* Doc. Nos. 1-2 ¶ 38; 7-2 at 2–3.) Plaintiffs did not oppose Fossil's incorporation by reference request, nor did Plaintiffs challenge the accuracy of the exhibit. (*See* Doc. No. 12.) Accordingly, the Court **GRANTS** Fossil's incorporation by reference request of Exhibit A.

### 2. Exhibit B: In-Store Return Policy

Regarding Exhibit B, Fossil argues incorporation by reference is justified because the Complaint mentioned Plaintiff Hyun relied on price tags and related signage at the 100 Citadel Drive outlet store. (Doc. No. 7-2 at 3; *see* Doc. No. 1-2 ¶ 13.) Exhibit B is a copy of Fossil's Return Policy. (Doc. No. 7-4 at 2.)

Here, Fossil has not demonstrated that the incorporation by reference doctrine applies. First, the existence of the in-store signage is disputed. (Doc. No. 1-2 ¶ 27.) Second, there is no reference in the Complaint to the return policy Fossil seeks to incorporate. (*See* Doc. No. 1-2.) *See Calderon v. Kate Spade & Co., LLC*, 2020 WL 1062930, at *2–3 (S.D. Cal. Mar. 5, 2020) (denying incorporation by reference of an in-store sign and its language because defendant failed to demonstrate plaintiff extensively referred to the sign). Thus, the Court **DENIES** Fossil's request for incorporation by reference for Exhibit B.

## IV.  DISCUSSION

Fossil's Motion seeks to dismiss Plaintiffs' UCL claims, FAL claims, and the claims for equitable relief. (Doc. No. 7-1 at 26.) The Court will address each argument in turn.

### A.  Plaintiffs' UCL and FAL Claims

Plaintiffs contend that Fossil violated the unlawful, unfair, and fraudulent prongs of the UCL by representing false former product prices and corresponding price discounts. (Doc. No. 1-2 ¶ 7.) Plaintiffs further asserted that Fossil's Like Style price comparison model was "untrue and misleading," violating the FAL. (*Id.*) Fossil counters that Plaintiffs fail to state their claims with sufficient particularity and reasonable consumers would review the Like Style disclosure and understand the pricing model. (Doc. No. 7-1 at 20.) The Court disagrees.

"Courts often analyze [CLRA, FAL, and UCL] statutes together because they share similar attributes." *Dawson v. Better Booch, LLC*, 716 F. Supp. 3d 949, 956 (S.D. Cal. 2024) (quoting *In re Sony Gaming Networks & Customer Date Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)); *see, e.g.*, *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1468–86 (2009).

Under the UCL, businesses participate in unfair competition by committing "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. And under California's False Advertising Law:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly . . . to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]

Cal. Bus. & Prof. Code § 17500.

California's FAL further provides:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. "This statute 'makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .'" *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023–24 (N.D. Cal. 2011) (quoting *Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*, 421 F.3d 981, 985 (9th Cir. 2005)). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Davis*, 691

F.3d at 1162 (citation and alterations omitted). "Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section." *Id.* (citation and alterations omitted).

UCL and FAL claims are governed by the "reasonable consumer" standard. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Under the reasonable consumer test, a plaintiff must "show that 'members of the public are likely to be deceived.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers[.]" *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Instead, "likely to deceive" means that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Moreover, "a representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Id.* Finally, courts have recognized that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Davis*, 691 F.3d at 1162 (brackets in original).

Fossil alleges that Plaintiffs "claim generally that Fossil tricked them into believing that the watches they purchased were previously sold for higher prices, but the Complaint never identifies what specific words any Plaintiff saw or relied on." (Doc. No. 7-1 at 15 (emphasis omitted).)

The cases which Fossil relies upon demonstrate clear examples of plaintiffs failing to meet the pleading requirement set forth in Rules 8 and 9(b). In *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2016 WL 7626188, at *7 (S.D. Cal. Oct. 17, 2016), the plaintiff failed to describe what misled his purchase. (Doc. No. 7-1 at 16.) In *Haley v. Macy's Inc.*, 263 F. Supp. 3d 819, 823–24 (N.D. Cal. 2017), the plaintiffs

merely stated that "advertising" misled their purchase and lacked product descriptions. (Doc. No. 7-1 at 16.) Lastly, in *Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS(JMA), 2016 WL 7655247, at *3 (S.D. Cal. Dec. 28, 2016), the plaintiffs alleged misrepresentation of a product that the defendant did not sell. (Doc. No. 7-1 at 16.) Each of these cases are distinguishable from the instant case.

Plaintiffs argue it is uncommon for courts to uphold dismissed UCL claims, unless "it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." (Doc. No. 12 at 11 n.2 (quoting *Williams*, 552 F.3d at 939).) Plaintiffs cite *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016) to support this assertion. (Doc. No. 12 at 11.) In *Stathakos*, Columbia sold and advertised items with 'Reference Prices' and 'Sales Prices.' *Id.* at *1. The plaintiffs perceived the Reference Prices as the former price and Sales Prices as the discounted value. *Id.* In their complaint, plaintiffs gave the purchase dates, store locations, and the sale and references prices of one purchased item. *Id.* at *3. The plaintiffs also alleged that such products were manufactured for Columbia's exclusive sale. *Id.* The court held that plaintiffs sufficiently described the "'who, what, when, where, and how' of the alleged fraud" and "need not allege more." *Id.* at *3.

For additional support, Plaintiffs rely on *Chester v. TJX Companies, Inc.*, No. 5-15-CV-01437-ODW-DTB, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016). TJX Companies' in-store products possess price tags listing the sell price and "Compare At" price. *Id.* at *1. The "Compare At" pricing definition can be found on the TJ Maxx website or in-store, near the customer service and returns counter. *Id.* The disclosure states:

> What do we mean by "compare at"? The "compare at" price is our buying staff's estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold. We buy products from thousands of vendors worldwide, so the item may not be offered by other retailers at the "compare at" price at any particular time or location. We encourage you to do your own comparison shopping as another way to see what great value we offer.

*Id.* The plaintiffs believed that the Compare At prices were reflective of the products' prices in other stores. *Id.* at *8. As such, the plaintiffs alleged the Compare At pricing model was misleading and deceptive, thereby violating the UCL, FAL, and CLRA. *Id.* at *1. Each plaintiff sufficiently and particularly described their harm; they outlined product descriptions, estimated prices, and estimated dates of purchase. *Id.* at *2, 12–13. The plaintiffs maintained they would not have purchased the items but for the perceived discount. *Id.* at *2. To satisfy Rules 8 and 9(b), the court explained that plaintiffs must plead how they were deceived, instead of a definitive showing of fraudulent conduct. *Id.* at *12 ("[t]he focus is on whether enough facts support a reasonable consumer's reaction to an allegedly deceptive advertisement"). The plaintiffs pled the Compare At prices "would deceive a reasonable consumer," satisfying Rule 9(b). *Id.* at *13.

Here, the facts are distinguishable from *Azimpour*, *Haley*, and *Rael*. The present case aligns more with *Stathakos* and *Chester*. Plaintiffs contest they were deceived by Fossil's Like Style pricing model. (Doc. No. 1-2 ¶¶ 11–13.) Plaintiffs allege the Fossil website omits the Like Style disclosure from the merchandise catalog page. (*Id.* ¶¶ 11–12.) Instead, the catalog page presents each piece of merchandise with bold, red "Now" prices, next to strikethrough "Like Style" prices, along with the appropriate percentage off. (*Id.*) The "i" symbol containing the Like Style disclosure appears when a customer clicks on the merchandise, landing on the specific product page. (*Id.*)

Like the online merchandise catalog, in store products contain price tags displaying crossed out Like Style price next to the product price, with the corresponding percentage discount. (*Id.* at 8.) However, Fossil stores lack Like Style disclosures. (*Id.* ¶ 11.) Upon a consumer's in-store purchase, the receipt reflects price reductions but does not reference Like Style pricing. (*Id.* ¶¶ 13–14.)

Plaintiffs allege that both online and in-store products are not sold at the Like Style price. (*Id.* ¶ 15.) Additionally, Plaintiffs state such products were designed and manufactured for Fossil, in which the Like Style comparison is unnecessary, thereby deceiving reasonable consumers. (*Id.* ¶ 10.) Similar to the plaintiffs in *Stathakos*, Plaintiffs

here described who, what, when, where, and how in their Complaint. (Doc. No. 1-2). Plaintiffs also provided sufficient facts to show that a reasonable consumer may be misled by an allegedly deceptive advertisement. *See Chester*, 2016 WL 4414768, at *12. As such, Plaintiffs provided sufficient and particular information to satisfy Rules 8 and 9(b). Accordingly, the motion to dismiss as to Plaintiffs' UCL and FAL claims is **DENIED**.

### B. Plaintiffs' Prayer for Equitable Relief

Fossil argues that Plaintiffs lack standing for equitable relief because Plaintiffs fail to demonstrate their intent to purchase Fossil products in the future. (Doc. No. 7-1 at 26.) Plaintiffs assert that they can recover equitable remedies under the UCL as a result of being harmed by Fossil's allegedly false advertising. (Doc. 1-2 ¶ 91.) The Court disagrees.

For injunctive relief, "the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 293 (2009)). An equitable remedy is unavailable unless plaintiffs make "a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "Past wrongs, though insufficient by themselves to grant standing, are evidence" of actual and imminent injury. *Davidson*, 889 F.3d at 967 (internal quotation marks omitted); *see Lyons*, 461 U.S. at 102. Actual and imminent injury may include the "consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 970.

Here, Plaintiffs seek injunctive relief. (Doc. No. 1-2 ¶ 91.) Throughout their Complaint, Plaintiffs allege Fossil "improperly obtained money from Plaintiffs and the Class." (*Id.* ¶¶ 62, 70, 81, 90.) However, Plaintiffs fail to identify an "impending risk of [them] being subjected to [Fossil's] allegedly false advertising[]" in the future. *See Davidson*, 889 F.3d at 972. While Plaintiffs sufficiently allege economic harm, the future

threat of actual and imminent injury is omitted. (Doc. No. 1-2 ¶¶ 61–62, 68–70, 79–81, 89–90.) Accordingly, the Court **GRANTS** the motion to dismiss Plaintiffs' claims for equitable relief **WITH LEAVE TO AMEND**.

## V.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Fossil's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 7-1) and Fossil's request for judicial notice and incorporation by reference. (Doc. No. 7-2). On or before **December 1, 2025**, Plaintiffs may file a First Amended Complaint. Fossil must file an answer or otherwise respond to the operative complaint by no later than **December 22, 2025**.

**IT IS SO ORDERED.**

Dated: November 21, 2025

Hon. Anthony J. Battaglia
United States District Judge